IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS – BROWNSVILLE DIVISION

| | |
|---|---|
| JENNIFER SCARBOROUGH,<br><br>            Petitioner,<br><br>v.<br><br>LOZANO ET AL;<br><br>            Respondents. | Civil Misc. Action No. 1:22-mc-00100<br><br>Judge Fernando Rodriguez, Jr. |

**MEMORANDUM IN OPPOSITION TO PETITIONER'S
MOTION TO QUASH THIRD-PARTY SUBPOENA AND FOR PROTECTIVE ORDER**

**Introduction**

The issue before the Court is to determine whether Petitioner Jennifer Scarborough ("Scarborough") has demonstrated grounds exist under Fed. R. Civ. P. 45(d) that allow her to avoid responding to the third-party subpoena Respondents Alexandra Lozano, Angelyne Lisinski, and Giulia Fantacci (collectively, "Respondents") served on Scarborough on August 23, 2022, in Harlingen, Texas (the "Subpoena"). In Scarborough's Motion to Quash Third-Party Subpoena and for Protective Order ("Motion" or "Mot", Doc. 1), Scarborough offers virtually no evidence to that effect. This is because the Subpoena is properly limited in scope, and is in compliance with all the requirements of Fed. R. Civ. P. 45.

Instead, Scarborough argues that because the Southern District of Ohio (the issuing court) lacks personal jurisdiction over Scarborough, she is not required to comply with that subpoena. (Motion at 13-17). Scarborough misses the point: Whether the Southern District of Ohio has personal jurisdiction over her has literally nothing to do with her duty to comply with the subpoena pursuant to Fed. R. Civ. P. 45. As this Court is well aware, the extensive amendments

to Fed. R. Civ. P. 45 enacted in 1991 and 2013, expressly permit nationwide service of third-party subpoenas. The case law that Scarborough relies upon is outdated and inapposite. At its core, Scarborough's argument is incorrect because the Subpoena's "place of compliance" (and the forum for enforcement) as defined in Fed. R. Civ. P. 45, is in this very district, the Southern District of Texas, which undoubtedly has personal jurisdiction over Scarborough. Thus, Scarborough's argument is without merit, and the Respondents respectfully request the Court deny Scarborough's Motion in its entirety and order her compliance with the perfectly valid subpoena.

## Factual Background

### A. Respondents Are The Target Of A Two-Year Defamatory Harassment Campaign By Anonymous Online Detractors And Competitors.

As alleged in their Complaint (Mot. Exh. E, Doc. 1-5), Respondents are immigration attorneys who operate their own successful law firms. They each have specialized knowledge of Violence Against Women Act ("VAWA") visas and Victims of Trafficking in Person or "T" visas, which are misunderstood and underutilized. (Compl. ¶ 10). Each of Respondents also use trademarks in their practices for educational and marketing purposes. (*Id*. ¶¶ 11-23).

In or around August 2020, Respondents became the target of a defamatory, discriminatory harassment campaign by anonymous individuals online (the "Doe Defendants"). (*Id.* ¶ 27). At the start, the Doe Defendants targeted Respondents' accounts on the social media platform TikTok, Inc. ("TikTok"). (*Id.*) The campaign was aimed at disrupting Respondents' ability to educate potential clients about VAWA and T visas, and prohibit Respondents from marketing their services. The campaign also defamed Respondents by painting their ethical and successful legal practices as illegal and scams. The campaign escalated to the point where each

of Respondents were banned by TikTok at multiple times over the last year due to these defamatory and harassing efforts by Defendants. (*Id.* ¶¶ 31-32, 34, 41, 46-47, 52).

Doe Defendants then spread their campaign to other social media platforms. (*Id.* ¶ 56). For example, Doe Defendants have reported marketing content, paid advertising, and organic posts on Facebook, and have spammed review websites such as Facebook and Google, all in an unlawful campaign purposely designed to disrupt Respondents' ability to help the undocumented immigrant population. (*Id.*).

Doe Defendants then escalated their attacks on Respondents by creating imposter accounts on social media platforms to further dissuade members of the undocumented community from trusting and utilizing Respondents' services. (*Id.* ¶ 57). These imposter accounts have contacted Respondents' current and prospective clients, requesting money, making defamatory comments, and using Respondents' trademarks as a part of the harassment campaign. (*Id.* ¶¶ 58-68).

B. **Respondents Have Been Unable to Identify Their Anonymous Harassers, And Were Therefore Granted Leave To Serve Third Party Subpoenas.**

Because the attacks have been conducted online, through third party platforms, and anonymously, Respondents have been unable to ascertain the identities of their harassers. The only way Respondents can obtain the names of the individuals who are methodically and tortuously damaging Respondents each day is through third party subpoenas. Therefore, Respondents sought leave from the Southern District of Ohio (where the Complaint is pending) for limited discovery to determine the identity of the individuals promulgating the defamatory statements concerning Respondents. The Southern District of Ohio granted Respondents leave to issue third party subpoenas, including subpoenas to individuals known to Respondents who are believed to be connected to the defamation and infringement campaign, and who are believed

to know the identities of the individuals defaming Respondents.  (Opinion and Order, Aug. 12, 2022, Mot. Exh. D, Doc. 1-4).  This includes Petitioner Scarborough.

### C. Petitioner Scarborough Has Heard Defamatory Statements Regarding Respondents.

Scarborough's Motion makes clear that Scarborough, at the very least, has heard defamatory statements concerning Respondents and thus had information directly relevant to the subpoena and Respondents' lawsuit.  To begin, Scarborough mischaracterizes Respondent Lozano's advertising, and specifically her use of the phrase "arreglar sin salir" (which translates to "obtain documents without leaving the country")  (Mot. at 3).  Scarborough implies Lozano tells "most" prospective clients they are eligible for VAWA or T-Visas, which is simply not true and rings markedly similar to known defamatory statements that have been made against Lozano.  Scarborough notes that she is aware of the "leading immigration attorneys" who have publicly criticized (and defamed) Lozano, thereby outright admitting that she knows of individuals who have engaged in the very conduct alleged in Respondents' Complaint.  (Mot. at 3-4).  Scarborough claims "on information and belief" that Lozano charges her clients $20,000 or more per VAWA case—which is also not true and also aligns closely with other defamatory remarks that have been made about Lozano.  (Mot. at 4).  Evidently, someone told Scarborough this false information, and that someone may very well be the Doe Defendant(s) Respondents were granted discovery to identify.  Likewise, Scarborough claims that the American Immigration Lawyers Association ("AILA") condemned Respondents' social media marketing, but none of Respondents' names appear in the cited article, nor does the article describe how Respondents actually market their services.  (*Id.*).  Again, Scarborough must have been told that this was the case by someone, which renders her knowledge squarely within the purview of Respondents' case.

Significantly, in her Motion, Scarborough discusses her Washington State Bar Association ("WSBA") Complaint against Lozano, but misinforms the Court as to Lozano's compliance with that Complaint—again repeating false statements. Scarborough claims Lozano did not comply with document requests from the WSBA, but in an August 29, 2022 letter to Scarborough, the WSBA informed Scarborough that Lozano responded to the January 14, 2022 document request (attached to the Motion at Exh. G, Doc. 1-7) on February 4, 2022. (*See* Ltr. to Scarborough from F. D'Angelo, Aug. 29, 2022, attached as Exh. 1). Scarborough plainly has heard false and defamatory information regarding the Respondents, as she repeated some of those false statements in her Motion and attached declaration. Accordingly, Scarborough has information that is relevant to Respondents' lawsuit due to the statements made in her Motion.

    **D.**    **Counsel Met and Conferred Regarding the Scope of the Subpoena.**

On August 23, 2022, Respondents served the Subpoena on Petitioner, with a return date of September 12, 2022--providing some 20 days for compliance. On September 6, 2022, 14 days after the Subpoena was served, and the final day for objections to be served on Respondents, Petitioner's counsel emailed Respondents asserting general objections as to "relevance, undue burden, and privilege," and requesting an extension of the deposition. (*See* Email chain between A. Maldonado and K. Fraser, Sept. 6, 2022, attached as Exh. 2). Respondents' counsel responded, offering a one week extension for the deposition, and noting that: 1) Respondents were not seeking disclosure of privileged information; 2) a limited deposition just down the road from Scarborough's office, determining the extent of Scarborough's knowledge regarding the identity of individuals who are defaming Respondents was not burdensome; 3) that Respondents were open to discussing the scope of the document requests if the volume of potentially

4

responsive documents was in fact overly burdensome; and 4) that Scarborough had information relevant to the identities of individuals who are defaming Respondents. (*Id.*)

Counsel met and conferred regarding the Subpoena and Respondents offered to prepare a review protocol with agreed search terms and methods for finding responsive documents. That proposed protocol was sent to Petitioner's counsel on September 13, 2022, inviting comments. (*See* Email from K. Fraser to A. Maldonado, Sept. 13, 2022, attached as Exh. 3). Over the phone, on September 16, 2022, Petitioner's counsel rejected the protocol without providing comments, refused to produce any documents, and sought to limit Petitioner's deposition to the issue of personal jurisdiction and her contacts with Ohio. (Mot. at 2). Because Petitioner asserted no privilege (or privilege log) that justified the withholding of documents, provided no information regarding the volume of potentially responsive documents under the protocol so that Respondents could evaluate the alleged undue burden associated with responding to the subpoena, and because there was no legal basis to restrict the scope of the deposition to Scarborough's contacts with Ohio, Respondents did not agree to Petitioner's proposal. This Motion followed.

## **Legal Standard**

Fed. R. Civ. P. 45(d)(3) requires a subpoena be quashed or modified when the subpoena: (i) fails to allow reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or protected matter, if no exception or waiver applies; or, (iv) subjects a person to undue burden. "A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Gray-Standberry v. Ashley Distribution Servs., Ltd.*, No. 6:20-CV-00638, 2021 WL 2792984 *3

(W.D. Texas, Mar. 3, 2021) (quoting *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016). Indeed, it is "highly problematic" when a motion to quash provides "no evidence" that a subpoena is "over-broad" or "irrelevant." *Gray-Standberry*, 2021 WL 2792984 at *3.

To prove that a subpoena imposes an undue burden, the moving party must prove that compliance with the subpoena would be "unreasonable and oppressive." *Wiwi v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). To evaluate undue burden, courts examine the relevance of the information requested, the need for the requested documents, the breadth of the request, the time period covered by the request, the particularity with which the party describes the relevant documents, and the burden imposed. *Id.* Finally, courts favor modification over outright quashing of subpoenas. *Id.*

## Argument

The Court should deny Petitioner's Motion because Petitioner's personal jurisdiction argument is fundamentally incorrect, and provides Petitioner with no basis for quashing the Subpoena. Second, Petitioner provides no evidence that compliance with the Subpoena presents an undue burden or that there is some other basis under Fed. R. Civ. P. 26 to enter a protective order. Indeed, much of Petitioner's affidavit indicates that compliance would not be burdensome at all. Therefore, the Court should deny the Motion in its entirety and Petitioner should be made to produce documents and sit for the requested deposition.

    **A.**    **Fed. R. Civ. P. 45 Addresses Petitioners' Personal Jurisdiction Concerns, Rendering Petitioner's Argument Moot.**

The only argument Petitioner forwards in support of her Motion is that complying with the Subpoena presents an undue burden because she is not subject to personal jurisdiction in the Southern District of Ohio. This argument misses the mark, because Respondents are not seeking compliance with a Subpoena in the Southern District of Ohio. They are seeking compliance in

6

the Southern District of Texas, pursuant to Fed. R. Civ. P. 45.  The Southern District of Texas does have personal jurisdiction over Scarborough.  As such, there is no undue burden in complying with the Subpoena, and the motion should be denied.

>   **1.     The Court Responsible For Enforcing Subpoenas Issued By A Federal Court Has The Jurisdiction To Compel Compliance Or Quash The Subpoena.**

A federal court's subpoena power is not limited to individuals only subject to personal jurisdiction in that court.  The Court need only to consult the language of Fed. R. Civ. P. 45 to see that this is so.  The rule references the "issuing court" and the "place of compliance."  The issuing court is the court where the action is pending.  *See* Fed. R. Civ. P. 45(a)(2).  The place of compliance must be within 100 miles of where the person, resides, is employed, or regularly transacts business.  *See* Fed. R. Civ. P. 45(c).  Notably, the issuing court need not be within 100 miles of where the person resides, is employed, or regularly transacts business.  Indeed, if the issuing court is not within 100 miles of where the person resides, is employed, or regularly transacts business, then the court for the district where compliance is required is charged with enforcing the subpoena.  *See* Fed. R. Civ. P. 45(d), (g).  In other words, the court for the district where compliance is required is the court that compels a party to respond to a subpoena, that quashes subpoenas, and holds noncompliant parties in contempt.

By definition, the court for the district where compliance is required has personal jurisdiction over a subpoenaed person because it is where the subpoenaed person resides, is employed, or regularly transacts business.  Residing, being employed in, or regularly transacting business in a forum certainly satisfies the minimum contacts and due process requirements of the United States Constitution.  *See Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) ("[D]ue process requires

7

only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice"). Therefore, Fed. R. Civ. P. 45 incorporates and accounts for due process considerations, and renders personal jurisdiction arguments regarding subpoenas moot.

The Advisory Comments to Fed. R. Civ. P. 45 say the same. Specifically, the comments recognize that the 2013 Amendments to the rule "permit nationwide service of a subpoena." (CITE). However, "[t]o protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c)." *Id.*

Here, the Subpoena complied with all the requirements of Fed. R. Civ. P. 45. It issued out of the Southern District of Ohio. Fed. R. Civ. P. 45(a)(1) and (2). The place for compliance in the Subpoena is the Harlingen Public Library, less than one mile from Scarborough's place of employment. (*See* Subpoena, Mot. Exh. A, Doc. 1-1). This satisfies the 100-mile requirement of Fed. R. Civ. P. 45(c)(A). That makes this Court, the Southern District of Texas, the court for the district where compliance is required. It is this Court that has the power to enforce or quash the subpoena—not the Southern District of Ohio. And Scarborough is without a doubt subject to personal jurisdiction in this Court. (*See* J. Scarborough Decl. ¶ 1, Sept. 19, 2022, Mot. Exh. B, Doc. 1-2, hereafter, "Scarborough Decl."). Scarborough's concerns regarding the jurisdiction of the Southern District of Ohio and Ohio's long-arm statute are mooted by the language of Fed. R. Civ. P. 45 itself. Therefore, the fact that the Subpoena issued from the Southern District of Ohio

does not mean that Scarborough does not need to comply with it, because it is enforced here, in the Southern District of Texas, which has personal jurisdiction over Scarborough.[1]

### 2. The Case Law Petitioner Cites In Support Of Her Personal Jurisdiction Argument Is Either Antiquated Or Inapposite.

The case law Petitioner cites in support of her personal jurisdiction argument is wholly inapplicable here because this Court—the Southern District of Texas, which is the enforcing court—has personal jurisdiction over Scarborough and can compel her compliance with the Subpoena. Despite that fundamental flaw in Petitioner's argument, the case law she cites is antiquated or inapposite.

*Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413 (10th Cir. 1996) concerns an administrative subpoena issued by the Securities Exchange Commission. *Id.* at 416. Because Congress authorized worldwide service under the Securities Exchange Act, the question in *Knowles* was whether a Bahamian citizen had minimum contacts *with the United States* such that a federal court could enforce a subpoena over him. *Id.* at 417. The Tenth Circuit made clear that the only issue was whether the foreign national had sufficient contacts with the United States, noting that "[s]pecific contacts within the district in which enforcement is sought, in this case Colorado, are unnecessary." *Id.* This inquiry is wholly distinguishable from this case, and if it were applicable, it would support Respondents' position, not Petitioner's—obviously Petitioner has minimum contacts with the United States. Even more, she certainly has minimum contacts "within the district in which enforcement is sought" which is

---

[1] In making this argument, Respondents do not concede that the Southern District of Ohio does not have personal jurisdiction over Scarborough. Respondents simply argue that the question of whether the Southern District of Ohio has personal jurisdiction over her is irrelevant to her duty to comply with a properly issued subpoena where the place of compliance is in this district—the Southern District of Texas.

9

this court—the Southern District of Texas. Likewise, *Gucci Am., et al v. Weixing Li*, 768 F.3d 122 (2d. Cir. 2014) concerns a subpoena to the Bank of China—again not a U.S. citizen.

Both *Ariel v. Jones*, 693 F.2d 1058 (11th Cir. 1982), and *Elder-Beerman Stores Corp. v. Federated Dept. Stores, Inc.*, 45 F.R.D. 515 (S.D.N.Y. 1968) predate the modern Fed. R. Civ. P. 45 amendments by 31 and 45 years respectively. In *Ariel v. Jones*, the 11th Circuit took issue with a federal court in Florida requiring compliance with a subpoena *in Florida*. 693 F.2d at 1060. Citing the 1982 edition of *Moore's Federal Practice*, the court noted that an out of forum witness requires recourse "to the district court in the district of the witness's residence for the issuance and enforcement of a subpoena." *Id.* But the modern Fed. R. Civ. P. 45 solves this problem—it requires the issuance of a subpoena from the forum where the action is pending, but enforcement in the district court where the witness is located, giving the witness recourse in her local district court. Remember that in the case before this Court, the subpoena issued from the Southern District of Ohio, but the place of compliance is here in the Southern District of Texas. Scarborough was never asked to come to the Southern District of Ohio, or to bring documents to the Southern District of Ohio. *Elder-Beerman* only considered whether a nonparty was sufficiently present in the district so as to subject it to legal process there. 45 F.R.D. at 516. That case has absolutely no bearing on the modern Fed. R. Civ. P. 45, and is also wholly inapposite because Respondents are not requesting compliance in the Southern District of Ohio. They are properly requesting compliance in the Southern District of Texas, which has personal jurisdiction over Scarborough. *See Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 630 (C.D. Cal. 2018).

At bottom, Scarborough's Motion is without merit. Every day, nonparty witnesses are subpoenaed for information in cases pending nationwide—both in federal and state court. And

10

federal and state law provides mechanisms to allow that discovery to proceed with Due Process considerations in mind, either through domestication of subpoenas in state courts, or through making local courts responsible for enforcing subpoenas as in federal court.  To argue that litigants may only take discovery from individuals subject to the jurisdiction of the court where the action is pending would gut Fed. R. Civ. P. 45, hamstring litigants throughout the United States, and make complex civil litigation virtually impossible.  Not only is Scarborough's Motion wrong, it's wholly impractical.  Respondents followed the letter of Fed. R. Civ. P. 45 to the tee, and thus Scarborough is obligated to comply with the Subpoena.  Accordingly, Respondents request that the Court deny Scarborough's Motion to Quash in total.

        **B.**       **There Is No Basis For The Requested Protective Order.**

Should her Motion to Quash fail, Petitioner requests that the Court enter a protective order limiting discovery to Scarborough's contacts with Ohio, and expressly excluding the phrase "arreglar sin salir."  However, beyond conclusory statements, Petitioner has not demonstrated how the requested discovery subjects Petitioner to "annoyance, embarrassment, oppression, or undue burden or expense," that would entitle her to a protective order as required by Fed. R. Civ. P. 26(c).  This Circuit requires that a movant show the "necessity" of a protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978).  Petitioner's request for a protective order fails for three reasons.  First, Petitioner has waived her objections to the Subpoena because she has failed to object to the Subpoena's requests with the necessary specificity.  Second, Petitioner has not provided the Court with particular evidence that compliance with the Subpoena would subject her to undue burden or expense.  Third, the Subpoena has been authorized by the Southern District of Ohio, and is

11

narrowly tailored for its limited purpose—that is determining the identities of the individuals who are defaming respondents.

To date, Petitioner has only submitted general, boiler-plate, unsupported objections to the Subpoena, which violates the Federal Rules, and renders those objections invalid. *See Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014); *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films*, LLC, 313 F.R.D. 39, 47 (N.D. Tex. 2015) (extending Fed. R. Civ. P. 34(b) and *Heller*'s prohibition on general objections to responses to subpoenas served pursuant to Fed. R. Civ. P. 45). It is well established that simply stating a discovery request is "overly broad, burdensome, oppressive, and irrelevant" is "not adequate to voice a successful objection." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Here, Petitioner's counsel emailed Respondents' counsel, stating Petitioner objected to the Subpoena as to "relevance, undue burden, and privilege." (*See* Exh. 2). Likewise, in the Motion, Petitioner asserts that the Subpoena is "unduly burdensome, overly broad, lacks proportionality, and the testimony and documents requested are not relevant to the claims in [Respondents]' Complaint," without any specificity. (Mot. at 6). Thus, Petitioner has waived objections as to the scope of the Subpoena, and there is no basis for a protective order.

Relatedly, Petitioner has not submitted any facts or evidence that demonstrate complying with the Subpoena would subject Petitioner to undue burden. Scarborough's Motion and declaration do not provide any insight into the volume of potentially responsive documents. Instead, Scarborough's declaration seems to indicate that the universe of potentially responsive documents would be small and easily identifiable, and that the deposition would be short, given her scope of knowledge. (Scarborough Decl. ¶¶ 16-18, 25). Further, on its face, the Subpoena is not unduly burdensome. It seeks documents on four specific topics for a limited time period of

two years, and does not require production of documents in native form (which would be much more expensive). The deposition, likewise, imposes little burden because it is limited in scope, and is scheduled to take place less than a mile from Scarborough's office. Because Petitioner has not supported her claims of undue burden with any specific evidence, her request for a protective order should be denied. *See Garrett*, 571 F.2d 1323, 1326 n.3.

Finally, the Subpoena seeks information that is relevant to Respondents' Complaint, and that is the identity of the Doe Defendants. The Southern District of Ohio authorized Respondents to seek discovery from third parties, finding the requested discovery to be necessary to revealing the identities of the Doe Defendants. (Order at 3, Mot. Exh. D, Doc. 1-4). Specifically, the Court authorized subpoenas of individuals "to determine the extent of those individuals' knowledge regarding the defamatory campaign, and their knowledge of the defamers' identities." (*Id.*). That is all that Respondents seek from Scarborough. The requested information is narrow and relevant. Petitioner's request that the Subpoena be limited to Scarborough's contacts with Ohio and expressly exclude the phrase "arreglar sin salir" is inconsistent with the discovery authorized by the Southern District of Ohio. Scarborough is not a party, and thus whether the Southern District of Ohio has personal jurisdiction over her is an irrelevant inquiry.

Instead the relevant inquiry is into Scarborough's knowledge regarding the origin of the defamatory statements and campaign against Respondents. As explained above, Scarborough's motion plainly indicates that she has knowledge relevant to this narrow issue. Scarborough repeats untrue statements regarding Lozano's advertising. (Mot. at 3-4). Scarborough claims to have information regarding what Lozano charges for her work and how Lozano puts her cases together, even though Scarborough has never been a client of Lozano's. (*Id.* at 4). Scarborough

13

claims that the AILA condemned Respondents' social media marketing, but none of Respondents are named in the AILA article. (*Id.*). And Scarborough was specifically told by the WSBA that Lozano had complied with document requests, but chose to tell the Court that Lozano had not complied with those requests. (*Supra* at 4). Scarborough got all of this information from somewhere. And Respondents believe that source is also responsible for the defamation campaign. Thus, Scarborough has relevant information, and Respondents are entitled to examine Scarborough as to the extent of this relevant knowledge.

Respondents have been willing to work with Scarborough and her counsel to ensure that the document production as well as the deposition are not overly burdensome. But Scarborough never provided Respondents with information as to how the deposition or document production is overly burdensome, and essentially stopped working with Respondents once she determined personal jurisdiction was the lynchpin of her duty to comply with the Subpoena—which it is not. Likewise, Scarborough has failed to demonstrate to this Court why a protective order is required here. Respondents remain willing to work with Scarborough to facilitate the document review and are committed to following the Order of the Southern District of Ohio, and limiting the deposition to uncovering the identities of the Doe Defendants. Thus, the protective order requested by Scarborough should be denied, and the discovery should proceed.

## Conclusion

This Court has personal jurisdiction over Scarborough, and by rule, this Court is the court charged with enforcing the Subpoena. As such, there is no basis to quash the Subpoena for lack of personal jurisdiction. Further, there is no basis for the entry of Scarborough's requested protective order: the Subpoena's document requests and requested deposition are targeted at identifying the Doe Defendants, and are thus relevant and proportional to the needs of the case.

For these reasons, and the reasons identified above, Respondents request that the Court deny Scarborough's Motion in its entirety, and that the deposition be scheduled promptly.

Date: October 10, 2022                                    Respectfully submitted,

                                                      /s/ Kirsten R. Fraser
Shawn J. Organ (0042052)
   *Trial Attorney*
*Pro Hac Vice*
Kirsten R. Fraser (0093951)
*Pro Hac Vice*
Ashley T. Merino (0096853)
*Pro Hac Vice*
Organ Law LLP
1330 Dublin Road
Columbus, Ohio  43215
614.481.0900
614.481.0904 (f)
sjorgan@organlegal.com
kfraser@organlegal.com
amerino@organlegal.com

*Attorneys for Respondents*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 10, 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system and was served on all counsel of record.

/s/ Kirsten R. Fraser
*Attorney for Respondents*
