**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS – BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| SCARBOROUGH, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Case Misc. Action No. 1:22-mc-00100 |
| v. | ) | |
| | ) | Judge Fernando Rodriguez, Jr. |
| LOZANO et. al., | ) | |
| | ) | |
| Respondents | ) | |

**EXHIBIT**

A

**SUPPLEMENTAL DECLARATION OF MOVANT JENNIFER SCARBOROUGH**
**IN SUPPORT OF HER MOTION TO QUASH THIRD-PARTY SUBPOENA**
**AND FOR A PROTECTIVE ORDER**

I, Jennifer Scarborough, declare,

1. In April of 2021, I filed a bar complaint against Alexandra Lozano, one of the Respondents to this Motion to Quash.  I reported Ms. Lozano's business practices, conflict of interests, and marketing to the Washington State Bar Association.

2. As part of the complaint, I translated and transcribed around 12 of her social media videos.  I also filed numerous other pieces of evidence to support the complaint.

3. Because of the amount of evidence that I had compiled for the bar complaint, I had a strong understanding of her marketing practices, especially with how she markets VAWA. When the American Immigration Lawyers Association (AILA) issued its practice advisory about the ethics of marketing, I immediately recognized the "hypothetical" as discussing Ms. Lozano's manner of marketing.  It was incredibly obvious.

4. Ms. Lozano states that someone must have told me that the AILA practice advisory was written about her marketing practices. This is not true. I arrived at my own conclusions.

5. Also, to reiterate what I stated earlier, I only viewed Ms. Lozano's social media, and I compiled a sampling for the bar complaint.  I did not otherwise interact with her social media by reacting to videos, making comments, or reporting her videos.  I wanted the bar to make the decision about her marketing.  I also did not want to risk interacting with her social media in such a way that it would be removed from the platforms.  I felt like it was important for the evidence to remain as it was while the bar continued its investigation.

6. In her response, Ms. Lozano states that I was dishonest with this Court when I stated that Ms. Lozano had failed to "fully comply" with the bar investigation.  In the initial bar

complaint, I filed evidence that Ms. Lozano's husband owns En Solidaridad and that she refers her clients to his business for her psychological evaluations for VAWA immigration cases. I also included evidence that Ms. Lozano charges $1,200 for those evaluations. Ms. Lozano then stated in her May 2021 response to the bar complaint that she had filed over 1,000 VAWA cases with immigration. She also stated that, while she does refer her clients to her husband's business, the conflict had been waived because all of her clients signed conflict waivers. In January 2022, the WSBA requested a copy of all of the signed conflict waivers for all the clients that she had referred to her husband's business.

7. In August 2022, I spoke on the phone with the WSBA, and I asked for an update about the bar investigation. The WSBA told me that Ms. Lozano had not provided all of the conflict waivers for her husband's psychological evaluation business. Instead, the WSBA said that Ms. Lozano had provided something much more general. In other words, she had not fully complied.

8. Because Ms. Lozano heavily markets VAWA online, I believe that the failure to provide all of the conflict waivers is important and telling. Assuming that she has referred all 1,000 of her clients, or even just half of those clients, to her husband's psychological evaluation business at $1,200 a piece, then she has a strong financial interest in marketing VAWA in addition to her legal fees/profits.

9. I think that the way Ms. Lozano markets VAWA is deceptive. In one TikTok video, which had garnered over 11,000 views at the time that I submitted it to the bar in April 2021, Ms. Lozano stated the following:

"YOUR ATTORNEY IS WRONG! It is FALSE when attorneys say that you have to leave the country in order to fix your papers. Attorney Alexandra: Fix without leaving! 206-406-3068. If you entered the country illegally, there are ways to fix your papers. If an attorney has told you something else, you need another opinion. 206-406-3068. I am so tired of hearing attorneys say that if you entered illegally then you need to leave the United States to fix your papers. There is another way! So call us to see if you qualify."

10. And in another video that had garnered over 15,000 views at the time that I submitted to the bar in April 2021, Ms. Lozano stated:

"Other attorneys have told you that you have to LEAVE the USA in order to fix your papers? The Attorney Alexandra says: DON'T LEAVE!!!! I help my clients fix their papers HERE INSIDE of the USA WITHOUT LEAVING! Call us if you are married to a U.S. citizen or legal resident, if you are divorced from a U.S. citizen, or if you have a child 21 or older. The Attorney Alexandra 206-406-3068: DEDICATED TO THE RESULTS."

11. As I explained in my first declaration, the typical path established by Congress for immigrants, who have entered the U.S. without inspection, to regularize their status is by leaving the United States and going to an interview at a foreign Consulate. However,

there are limited exceptions, including  for certain victims of domestic abuse, who may regularize their status inside the United States by applying for VAWA.  For VAWA, they must show domestic abuse that rises to the level of "battery or extreme cruelty."

12. However, in those two videos, not only is Ms. Lozano advertising VAWA without mentioning the requirement of domestic abuse, but she is saying that doing the traditional process at a foreign consulate is simply wrong.  She paints attorneys who help their clients obtain green cards at foreign consulates as being misinformed or even committing malpractice.  She omits the requirements and makes it sounds as though all immigrants should be able to qualify for her secret method of obtaining papers inside the United States.  I don't know how else to describe such marketing besides misleading and deceptive.

13. The AILA Ethics of Marketing article, which I filed as an exhibit with my motion, cautions against such marketing tactics, and explains that it may open someone up to discipline by their bar association.

14. While I don't actually know what happens once individuals contact Ms. Lozano's law firm, I can see various separate pieces from the outside, and it gives me concern.  It gave me enough concern that I felt obligated to file a bar complaint against her- her marketing, her husband's psychological evaluation business, the cost of the evaluations, her intent on silencing anyone who questions her method by sending out cease and desist letters- all of it felt like something that should be investigated by her bar association.

15. I believe that Ms. Lozano has subpoenaed me for an improper purpose: retaliation against me for filing the bar complaint against her.  I have no connection to her and the other Respondents besides two Facebook discussions that I was involved in about 1.5 years ago.  My attorneys in Ohio requested evidence from the Respondents' counsel showing that I have any knowledge of the actions alleged in their complaint.  However, the Respondents have not provided any such evidence to me or to this Court.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Jennifer Scarborough

10/17/2022

Date